IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JOHN KEMET SHABAZZ EL,
    Plaintiff,

v.                                 CIVIL ACTION NO. 1:10CV38

EDWIN DELGADO,
TAYLOR COUNTY SHERIFF,
LEONARD LUCAS, also known as
Lenard Lewis, et als,
    Defendants.

## REPORT AND RECOMMENDATION/OPINION GRANTING DEFENDANT LUCAS' MOTION TO DISMISS

This matter is before the undersigned United States Magistrate Judge pursuant to Defendant Leonard Lucas' "Motion to Dismiss" and "Motion to Dismiss Amended/Supplement to Primary Complaint" [Docket Entries 17 and 22, respectively] and Plaintiff *pro se* John Kemet Shabazz El's Response [Docket Entry 27]. The matter has been referred to the undersigned pursuant to a referral order entered by United States District Judge Irene M. Keeley on March 15, 2010 [Docket Entry 4]. The undersigned finds the sole issues are legal questions and therefore decides the motions without a hearing.

### Procedural History

Plaintiff, *pro se*, filed his Complaint in this Court on March 8, 2010 [Docket Entry 1], along with a Motion for Leave to Proceed *in Forma Pauperis* [Docket Entry 2], which was granted [Docket Entry 5]. Summons on Defendant Lucas was executed on March 26, 2010 [Docket Entry 14], and the instant Motion to Dismiss was filed on April 15, 2010 [Docket Entry 17]. Plaintiff filed an Amended Complaint on April 26, 2010 [Docket Entry 19], and Defendant Lucas filed the Motion to Dismiss Amended/Supplement to Primary Complaint on May 21, 2010 [Docket Entry 22]. On

June 9, 2010, the Court entered a "Roseboro Notice" (See Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975)), advising Plaintiff of his right to file affidavits or other responsive material [Docket Entry 24]. Plaintiff did file his Response on June 25, 2010 [Docket Entry 27].

## Allegations in the Complaint

Plaintiff, John Kemet Shabazz El, who refers to himself in the Complaint as a "non-colonial original inhabitant. Domicile Monongahela Territory," filed a "U.S.C. 1983, 1985 civil human rights action" alleging violations of his Constitutional Rights, and seeking compensatory damages, punitive damages, immediate injunction, and writ of prohibition. The defendants are Edwin Delgado, Taylor County Deputy Sheriff, Lenard Lewis (actually Leonard Lucas), Taylor County Magistrate, Unknown Female Record Clerk, Unknown Female Nurse, and Superintendent of Tygart Valley Regional Jail. Defendant Lucas is "sued individually, and acting under color [of] law."

Because this Motion to Dismiss is filed only by Defendant Lucas, portions of the allegations not relating to him are omitted from this summary.

Plaintiff states that on December 30, 2009, he was traveling on Route 119 South from Morgantown to Grafton, West Virginia. Approximately 5-8 miles outside Grafton, in a very isolated location, Defendant Delgado turned on his lights to pull him over. Plaintiff continued to his destination at varying speeds of 15-25 mph until he voluntarily pulled over after arriving at his destination. Delgado requested identification. Plaintiff stated that his identification was his license and produced "Indigenous Muurs of Amexum Tribal Republic I.D. no IMA 082463." Delgado then requested State identification and Plaintiff produced an expired license. Plaintiff informed Delgado he was exercising his "Inherited Rights pursuant to United Nations treaties made into U.S. Law under the 9th Amendment." He also advised Delgado that in 1991 President Bill Clinton signed into

U.S. law the implementation of U.N. Human Rights treaties, and that on September 13, 2007, The Declaration on the Rights of Indigenous People was Ratified by the United Nations. Defendant Delgado requested Plaintiff's consent to search Plaintiff's vessel which consent was refused. Delgado searched the vehicle without consent. He then handcuffed Plaintiff without reading him Miranda warnings. No contraband was found. Delgado informed Plaintiff that "Pennsylvania authorities have a warrant for you," and said the car would be towed despite it being parked in a safe place. Delgado and two other officers had Plaintiff transferred to the Tygart Valley Regional Jail.

Officer Delgado wrote out two "summary citations" for all offenses except for the fleeing an officer charge which he said was a jailable offense. Plaintiff arrived at the jail between 4:30 and 5:00 am.

At approximately 3:15 December 30, 2009, Defendant Lucas, Taylor County Magistrate, conducted a video arraignment with Plaintiff from the Regional Jail. Plaintiff was provided a Criminal Bail Agreement and Criminal Complaint. The Bail Agreement had been filled out and signed by Magistrate Lucas, with bail set at $1,000 per charge for: (1) Fleeing an Officer; (2) Expired License; and (3) Required Security (insurance) (Taylor County Magistrate Court Case Nos. 09M-417-418-419). Plaintiff asked Magistrate Lucas if Pennsylvania was going to extradite him and Lucas told him "they were not going to do anything with that." Plaintiff requested Magistrate Lucas reduce bail, but Lucas refused, specifically saying bail was fair, "even though offenses (2) and (3) were stautatorily [sic] non-jailable."

On January 4, 2010, Plaintiff filed a motion to dismiss with the Taylor County Magistrate Court. On January 8, 2010, he was transported for hearing before Taylor County Magistrate Lucas.

Plaintiff pled no contest to Driving on an Expired License, and all other charges were then dismissed pursuant to the plea agreement. Plaintiff was sentenced to time served and released from jail.

## Causes of Action against Defendant Lucas

Plaintiff alleges that Defendant Lucas conspired with Defendant Delgado to assign required bail of $1,000 per charge for offenses which were non-jailable, and to detain him for non-jailable offenses. Plaintiff also alleges Defendant's actions "violated laws against religious and racial profiling/discrimination," and violated West Virginia law against judicial officers "extending the scope of their lawful authority."

## Claims for Relief

Plaintiff demands compensatory damages, damages for loss of income, trauma, loss of employment, maximum security dehumanization matrix, pre-trial detention anxiety, displaced agitation produced by abrupt loss of liberty, loss of status, loss of esteem, etc. He also seeks the sum of $14,000.00 for mental and emotional suffering resulting from the abrupt seizure/detainment of his person and temple vessel unlawfully. Plaintiff also demands injunction and writ of prohibition against Defendants for exceeding scope of authority regarding pretrial detention for nonjailable offense, and demands immediate injunction prohibiting detention in any maximum security regional jail facility statewide for acts which are non-jailable. "This injunction would also be placed upon unlawful acts of requiring bail for non-jailable offenses." Plaintiff also demands punitive damages in the amount of $150,000.00 "for the building of a Aboriginal Native American Reparations Retreat for Administrative Office of Recreation for rights of passage field trips and life skills development," to be "dedicated to "the Moundbuilders and Ancient Aboriginal of people of what is now called the United States of America and West Virginia, respectively."

## **Discussion**

Defendant Leonard Lucas moves for dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. He argues that Plaintiff's claims for monetary damages are barred by the doctrine of absolute judicial immunity. The official capacity claim fails because of Eleventh Amendment immunity. Finally, the claim for equitable relief fails because Plaintiff lacks standing.

In his Response, Plaintiff argues: 1) Defendant Lucas authorized a warrant for his arrest without jurisdictional authority or probable cause; 2) Judicial immunity is not absolute, particularly in instances where a judicial officer has no "'lawful jurisdiction to proceed' in restrainment of liberty or deprivation of rights;" 3) Defendant Lucas is not authorized in the name of the Commonwealth of Pennsylvania; 4) Defendant Lucas was placed on notice by Plaintiff's "Declarations of Diplomacy" and notice claiming "An Aboriginal American" status subject to human rights Recognition; 5) Defendant Lucas did not take Judicial Notice of foreign law as required by WV Code 57-1-4 and WV Rules of Evidence 201(d), 202(b) and (c); 6) Defendants Delgado and Lucas mutually agreed to approve and execute an arrest warrant that is clearly an abuse of process; 7) Defendant Lucas' actions in approving execution of a fraudulent warrant against Plaintiff amount to flagrant deprivation of rights liable as a civil matter as well as a criminal matter; 8) Defendant Lucas' actions in approving execution of warrant were non-judicial, since he had no jurisdiction to proceed; and 9) Defendant Lucas' exhibit 4 attached to his memorandum of law is "speculative" since Plaintiff never received such motion withdrawing the execution of warrant/plaintiff's exhibit (A) forthwith. These arguments do not appear to the undersigned to address the original claims that Defendant Lucas set bail for non-jailable offenses. Nevertheless, the undersigned shall attempt to decipher and address all the arguments.

Finally, Plaintiff filed an "Amended/Supplement to Primary Complaint with Injunction and Prohibition against Defendants' Unlawful Conduct," alleging that the repercussions of all of the defendants' acts were ongoing, because his booking photo had been posted, and remains posted under Tygart Regional Jail Information, subjecting him to public examination and ridicule. He therefore amended his demand for relief to include $100 per day for each defendant "directly responsible for the arrest and unlawful detainment of Plaintiff . . ." until each defendant received notice by the filing of the amended complaint; then $200 per day after ward.

Interestingly, the Court notes the exhibit attached to the amended/supplemental complaint is on its face a private internet website, www.wvjails.info, which describes itself as "your fair use public records news reporting and research resource." The site has a procedure for the individual to have his or her information removed for a fee. The undersigned reviewed the official West Virginia Division of Corrections page, which is public information, and did not find Plaintiff listed. The web site expressly states that it is public information, and therefore:

> Any person, agency or entity, public or private, who reuses, publishes or communicates the information available from this server shall be solely liable and responsible for any claim or cause of action based upon or alleging an improper or inaccurate disclosure arising from such reuse, re-publication or communication, including but not limited to actions for defamation and invasion of privacy.

### **Judicial Immunity**

A party may move to dismiss an action for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In assessing such a motion, the Court must accept the factual allegations contained in the complaint as true. Advanced Health-Care Services, Inc. v. Radfore Community Hospital, 910 F.2d 139 (4th Cir. 1990). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief." In re Mills, 287 Fed. Appx. 273 (4th Cir. 2008). "Specific facts are not necessary, the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. (internal citations omitted.)

> [T]he pleading standard Rule 9 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully - harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements.

Ashcroft v. Iqbal, - - - U.S. - - -, 129 S.Ct.1937, 173 L.Ed.2d 868 (May 18, 2009)(internal citations omitted.)

As this case involves a *pro se* plaintiff, however, this Court will only dismiss if it appears beyond doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." Haines v. Kerner, 404 U.S. 519, 92 S.Ct.594, 30 L.Ed.2d 652 (1972).

The doctrine of judicial immunity has been recognized by the United States Supreme Court since at least 1872. See Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed.646 (1872), which holds:

> For it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, be free to act upon his own convictions, without apprehension of personal consequences to himself.

Further,

> [J]udges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly.

Id. at 351. In Pressly v. Gregory, et al., 831 F.2d 514 (4th Cir. 1987), the Fourth Circuit specifically addressed a civil action pursuant to section 1983 against a state magistrate, finding:

7

> As judicial officers, magistrates are entitled to absolute immunity for acts performed in their judicial capacity. Timmerman v. Brown, 528 F.2d 811 (4th Cir. 1975). That immunity is vitiated only when the judicial officer acts in the clear absence of all jurisdiction. Stump v. Sparkman, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed. 2d 331 (1978).

In other words, a judge is not immune from liability for his or her non-judicial acts. Stump, supra at 360. A judge is also not immune for actions, even though judicial in nature, that were taken in complete absence of all jurisdiction. Id. at 356-357.

To determine whether an act is judicial, a court should examine the nature of the act itself. Id. at 362. Specifically, the court should determine whether the act complained of is a function normally performed by a judge. Id. Moreover, the court should consider the expectations of the parties, i.e., whether the parties dealt with the judge in his or her official capacity.

On a Motion to Dismiss a court may consider "the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice." Pennington v. Teufel, 396 F.Supp.2d 715 (N.D.W.Va. 2005). Plaintiff attached to his Complaint the following:

- Legal Memorandum 83-111 (Revised) from Patricia W. Griffin, Chief Magistrate, to "All Justices of the Peace" on May 28, 1997. In the memorandum, Chief Magistrate Griffin advised: "A person may not be held in pretrial detention for a nonjailable offense solely because he is indigent."

- Memorandum from Kathleen Kloos, Clerk of Courts for Mercer County, Pennsylvania, addressed to the Tygart Valley Regional Jail, dated January 8, 2010. Attached to the memo is a copy of the Order and Bench Warrant issued on March 28, 2007 for absconding supervision of the PA Bd. of Probation and Parole. The memo states: "When I transferred you to the DA's office, I believe Heidi explained to you that we will not be extraditing on this bench warrant."

- West Virginia Uniform Citation citing Plaintiff for: 1) Improper Registration in violation of 17A-9-3, and 2) no insurance in violation of 17D-2A-3.

- Criminal Bail Agreement, signed by Magistrate Lucas, noting Plaintiff was charged with: 1) Fleeing an Officer; 2) Expired License; and 3) No insurance, and setting bail in the amount of $3,000.00.

8

- Criminal Complaint dated December 30, 2009, signed by Magistrate Lucas, finding probable cause to believe that Plaintiff violated: 1) 61-5-17(e) (Fleeing from Officer); 2) 17B-2-12 Expired License; 3) 17D-2A-3(c) Required Security; 4) 17A-9-2(a) Operation of vehicle without evidence of registration; and (5) 17A-9-3 Improper use of evidence of registration.

The undersigned finds each of the above are "exhibits to Plaintiff's complaint, matters of public record, and other similar material that are subject to judicial notice," and therefore may be considered without converting this motion to a motion for summary judgment.

The Court also takes judicial notice of West Virginia Code sections 50-2-3, 61-5-17; 17D-5-3, 17A-11-1, and 5-1-9(d)-(f). 50-2-3 states, in pertinent part:

> In addition to jurisdiction granted elsewhere to magistrate courts . . . . A magistrate shall have the authority to issue arrest warrants in all criminal matters, to issue warrants for search and seizure and, except in cases involving capital offenses, to set and admit to bail: *Provided*, That in cases punishable only by the fine such bail or recognizance shall not exceed the maximum amount of the fine and applicable court costs permitted or authorized by statute to be imposed in the event of conviction.

(Emphasis added). Clearly, the setting of bail is therefore a function normally performed by a judge. Id. Moreover, Plaintiff was dealing with magistrate Lucas in his official capacity as a state magistrate. Magistrate Lucas is therefore entitled to absolute immunity for his acts in setting Plaintiff's bail and detaining him. Timmerman v. Brown, 528 F.2d 811 (4th Cir. 1975). This would be so even if, as Plaintiff argues, the offenses with which he was charged were non-jailable. "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority . . . ." Stump, supra, at 359.

Here, however, Plaintiff is factually incorrect in asserting that the offenses were non-jailable. W. Va. Code Section 61-5-17(e), regarding fleeing from an officer, provides:

> Any person who intentionally flees or attempts to flee in a vehicle from any law-enforcement officer, . . . .acting in his or her official capacity, after the officer has given a clear visual or audible signal directing the person to stop, is guilty of a

9

> misdemeanor and, upon conviction thereof, shall be fined not less than $500 nor more than $1,000 <u>and shall be confined in a regional jail not more than one year</u>.

(Emphasis added).

Section 17B-5-1 provides the penalty for violation of 17B-2-12, regarding driving on an expired license, as follows:

> Unless another penalty is in this chapter or by the laws of this State provided, every person convicted of a misdemeanor for the violation of any provisions of this chapter shall be punished by a fine of not more than five hundred dollars <u>or by imprisonment for not more than six months</u>, or by both fine and imprisonment.

(Emphasis added).

Section 17-D-5-3(b) provides the penalty for violation of 17D-2A-3(c), as follows:

> Any person who violates any provision of this chapter for which no penalty is otherwise provided is guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than five hundred dollars <u>or imprisoned in jail not more than ninety days</u>, or both.

(Emphasis added).

The three offenses under which Plaintiff was charged are all jailable offenses. Magistrate Lucas therefore committed no error by setting bail and detaining Plaintiff for each of the three offenses.

The only manner in which magistrate Lucas' immunity could be vitiated, therefore, is if he had acted in the clear absence of all jurisdiction. <u>Stump</u>, supra at 355-356. In this regard, Plaintiff also argues (albeit in his Response), that: 1) Defendant Lucas authorized a warrant for his arrest without jurisdictional authority or probable cause; 2) Judicial immunity is not absolute, particularly in instances where a judicial officer has no "'lawful jurisdiction to proceed' in restraint of liberty or deprivation of rights;" 3) Defendant Lucas is not authorized in the name of the Commonwealth

of Pennsylvania; 4) Defendant Lucas was placed on notice by Plaintiff's "Declarations of Diplomacy" and notice claiming "An Aboriginal American" status subject to human rights Recognition; 5) Defendant Lucas did not take Judicial Notice of foreign law as required by WV Code 57-1-4 and WV Rules of Evidence 201(d), 202(b) and (c); 6) Defendants Delgado and Lucas mutually agreed to approve and execute an arrest warrant that is clearly an abuse of process; 7) Defendant Lucas' actions in approving execution of a fraudulent warrant against Plaintiff amount to flagrant deprivation of rights liable as a civil matter as well as a criminal matter; 8) Defendant Lucas' actions in approving execution of warrant were non-judicial, since he had no jurisdiction to proceed; and 9) Defendant Lucas' exhibit 4 attached to his memorandum of law is "speculative" since Plaintiff never received such motion withdrawing the execution of warrant/plaintiff's exhibit (A) forthwith.

Arguments 1, 2, 3, 6, 7, and 8 all appear to the Court to deal with magistrate Lucas' having signed a warrant for Plaintiff's arrest for being a fugitive from justice. The Court first notes this claim was not part of the original complaint. Second, even if the allegation was correct, Plaintiff has not claimed magistrate Lucas set bail or detained him due to this warrant, but, instead, he set bond and detained Plaintiff on the three charges in the original West Virginia Complaint. The Court will, nevertheless, address the claim that in signing the warrant, magistrate Lucas acted "in the clear absence of all jurisdiction." The undersigned notes again, that section 50-2-3 provides a magistrate "the authority to issue arrest warrants in all criminal matters." Further, 5-1-9(d)-(g) provide, in pertinent part:

> (d) Whenever any person within this state shall be charge on the oath of any credible person before any judge or magistrate of this state with the commission of any crime in any other state and, except in cases arising under subdivision (g), section seven of this article, with having fled from justice, or with having been convicted of a crime

in that state and having escaped from confinement, or having broken the terms of his or her bail, probation or parole, or whenever complaint has been made before any judge or magistrate in this state setting forth on the affidavit of any credible person in another state that a crime has been committed in the state and that the accused has been charged in the state with the commission of the crime, and, except in cases arising under subdivision (g), section seven of this article, has fled from justice, or with having been convicted of a crime in that state and having escaped from confinement, or having broken the terms of his or her bail, probation or parole, and is believed to be in this state, the judge or magistrate shall issue a warrant directed to any peace officer commanding him or her to apprehend the person named therein, wherever he or she may be found in this state, and to bring him or her before the same or any other judge, magistrate, or court who or which may be available in or convenient of access to the place where the arrest may be made, to answer the charge or complaint and affidavit, and a certified copy of the sworn charge or complaint and affidavit upon which the warrant is issued shall be attached to the warrant.

(e) The arrest of a person may be lawfully made also by any peace officer, or a private person, without a warrant, upon reasonable information that the accused stands charged in the courts of a state with a crime punishable by death or by imprisonment for a term exceeding one year, but when so arrested the accused must be taken before a judge or magistrate with all practicable speed and complaint must be made against him or her under oath setting forth the ground for the arrest as in the preceding section and thereafter his or her answer shall be heard as if he or she had been arrested on a warrant . . . .

(f) If from the examination before the judge or magistrate it appears that the person held is the person charged with having committed the crime alleged and, except in cases arising under subdivision (g), section seven of this article, that he or she has fled from justice, the judge or magistrate must, by a warrant reciting the accusation, commit him or her to the county or regional jail for a time not exceeding thirty days, and specific in the warrant, as will enable the arrest of the accused to be made under a warrant of the governor on a requisition of the executive authority of the state having jurisdiction of the offense, unless the accused give bail as provided in subdivision (g) of this section, or until he or she shall be legally discharged.

(g) Unless the offense with which the prisoner is charged is shown to be an offense punishable by death or life imprisonment under the laws of the state in which it was committed, a judge or magistrate in this state may admit the person arrested to bail bond, with sufficient sureties, and in a sum as he or she considers proper, conditioned for his or her appearance before him or her at a time specified in the bond, and for his or her surrender, to be arrested upon the warrant of the governor of this state.

It cannot be disputed that there was a warrant for Plaintiff's arrest signed by Francis Fornelli, President Judge for the Court of Common Pleas (Criminal) of Mercer County, Pennsylvania, on March 28, 2007, as Plaintiff attached the Warrant to his own Response. That Warrant states:

> To the Sheriff of Mercer County or any other authorized person, in the name of the Commonwealth of Pennsylvania, you are commanded to take into custody JOHN KEMET SHABAZZ, <u>wherever the defendant may be found</u>, and bring him before this Court to answer to the Commonwealth upon the complaint of absconding supervision of the State Board of Probation and Parole, and further to be dealt with according to law, and for such purposes this shall be your sufficient warrant.

On December 30, 2009, Deputy Delgado filed a complaint, stating that Plaintiff "did unlawfully but not feloniously abscond supervision of the State Board of Probation and Parole (Commonwealth of Pennsylvania) . . . ." which magistrate Lucas then signed. Pursuant to 5-1-9(d), and the warrant from the Commonwealth of Pennsylvania, magistrate Lucas had jurisdiction to sign the warrant for arrest of Plaintiff as a fugitive from justice and to detain him on that warrant.

Arguments 4 and 5 appear to the Court to be based on Plaintiff's status as "An Aboriginal American" subject to human rights Recognition. In the original Complaint Plaintiff alleged Defendant Lucas "violated laws against religious and racial profiling/discrimination." The undersigned notes that Plaintiff advised Deputy Delgado during the traffic stop that his Identification was his license. He then produced "Indigenous Muurs of Amexum Tribal Republic I.D. No IMA 082463." He then advised Deputy Delgado that he was exercising his "inherited rights pursuant to United Nations treaties made into U.S. Law under the 9th Amendment;" the implementation of U.N. Human Rights treaties signed into law by then-President Bill Clinton in 1991; and the "Declaration on the rights of Indigenous People," ratified by the United Nations on September 13, 2007.

The undersigned first notes that while the Declaration on the Rights of Indigenous People was adopted by the U.N., the United States of America voted against it. Second, a United Nations General Assembly Declaration is not a legally binding instrument under international law.[1] In fact, one of the United States' objections was the Declaration's failure to provide a clear definition of exactly whom the term "indigenous peoples" is intended to cover. Finally, these declarations do not create federal causes of action. See Joyner-El v. Giammerella, 2010 WL 1685957 (S.D.N.Y. 2010) (citing Sosa v. Alvarez-Machain, 542 U.S. 692(2004)("the Declaration [of Human Rights] does not of its own force impose obligations as a matter of international law.")

More importantly, however, Plaintiff's Complaint fails to state any basis for a claim of either racial or religious discrimination against Defendant Lucas. Plaintiff claims in Count Five that "the defendants actions in 8 thru 223 violated laws against religious and racial profiling/discrimination." There is, however, absolutely no mention in those numbered paragraphs of Defendant Lucas even being aware of Plaintiff's religion, status or race. There is absolutely no allegation in those numbered paragraphs that Defendant Lucas acted based on Plaintiff's religion or race. Although Plaintiff alleges in those paragraphs that he showed Defendant Delgado his Indigenous Muurs of Amexum Tribal Republic I.D., there is nothing regarding this exchange in the traffic citation, criminal bail agreement, or affidavit and Criminal Complaint presented to Defendant Lucas. Again, there is not a scintilla of a showing that magistrate Lucas was even aware of Plaintiff's claimed status.

---

[1] Frequently Asked Questions Declaration on the Rights of Indigenous Peoples www.un.org reviewed on October 29, 2010.

## Injunctive Relief

Additionally, Plaintiff's claims for injunctive relief must also fail in the face of absolute judicial immunity. In <u>Pulliam v. Allen,</u> 466 U.S. 522, 104 S.Ct.1970, 80 L.Ed.2d 565 (1984) the U.S. Supreme Court held that a judge is not shielded by absolute judicial immunity from declaratory or injunctive relief. In 1996, Congress effectively reversed <u>Pulliam</u> by enacting the Federal Court Improvement Act of 1996 ("FCIA") (amending 42 U.S.C. 1983). Section 309(c) of the FCIA bars injunctive relief in any section 1983 action "against a judicial officer for an act or omission taken in such officer's judicial capacity . . . .unless a declaratory decree was violated or declaratory relief was unavailable." Thus the doctrine of judicial immunity in section 1983 now extends to suits against judges where a plaintiff seeks injunctive relief in addition to damages. See <u>Roth v. King</u>, 449 F.3d 1272 (D.C.Cir.2006)(stating that "42 U.S.C. section 1983, as amended in 1996 by the [FICA], explicitly immunizes judicial officers against suits for injunctive relief.

Even if magistrate Lucas did not have judicial immunity, his petition for injunction and writ of prohibition must be dismissed, because Plaintiff mistakenly still refers to nonjailable offenses. He states that he "petitions for immediate injunction to prohibit detention in any maximum security regional jail facility statewide upon the clearly unlawful act of incarcerating persons for acts which are non-jailable. This injunction would also be placed upon unlawful acts of requiring bail for non-jailable offenses."

As already found, the offenses for which magistrate Lucas set bond and detained Plaintiff were jailable offenses under West Virginia law. "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." <u>City of Los Angeles v. Lyons</u>, 461

U.S 95, 103 S.Ct. 1660 (1983). "The injury or threat of injury must be both real and immediate, no conjectural or hypothetical." O'Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669 (1974). The U.S. Supreme Court has found past exposure to allegedly illegal conduct insufficient to confer standing. Lyons, supra, at 102. In Lyons, the plaintiff sought injunctive relief after he was subjected to an alleged illegal chokehold during a traffic stop. The Court held that "past illegal conduct does not in itself show a present case or controversy . . . ." Id. at 461.

In the case at bar, Plaintiff alleges he was illegally held on bail for nonjailable offenses. Even if this were true, the acts would be past illegal conduct, and not a present case or controversy. More importantly, however, Plaintiff failed to establish he was subject to any past illegal conduct at all at the hands of magistrate Lucas. He therefore has no basis to claim he could be subject to future illegal conduct. Plaintiff has no standing to seek any equitable relief from magistrate Lucas in this matter.

**1985(3) claims**

Plaintiff also claims the defendants violated Section 1985(3), which prohibits any conspiracy to deprive an individual of his civil rights. To establish a claim under Section 1985, a Plaintiff must show: (1) the existence of a conspiracy; (2) for the purpose of depriving him, either directly or indirectly, of equal protection of the laws or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) injury in his person or property or deprivation of any right of a citizen of the United States. L. Joyner-El, v. Giameralla, et al. 2010 WL 1685957 (S.D.N.Y. 2010)(citing United Brotherhood of Carpenters & Joiners of America v. Scott, 463 U.S. 825,(1983). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise

16

class-based, invidious discriminatory animus behind the conspirators' action." United Brotherhood, 463 U.S. at 829).

Plaintiff's Section 1985(3) claim necessarily fails against magistrate Lucas, for the same reason as his 1983 claim; "due to the absence of any plausible allegation concerning racial or otherwise class-based discriminatory animus motivating [magistrate Lucas'] alleged misconduct. The mere allegation that the plaintiff is in a particular class– in this case, his complaint asserts he is a [Noble, Ancient Muurish Aboriginal Inhabitant] is not sufficient to state a conspiracy claim under Section 1985(3)."

## AMENDED/SUPPLEMENT to PRIMARY COMPLAINT

Plaintiff, in his Amended/Supplemental Complaint alleges he has discovered that his booking photograph had been posted, subjecting him to public examination and ridicule. Plaintiff demands $100 dollars per day for each day the photo was public until Defendants received notice of his claim, and $200 a day thereafter. He further demands an immediate injunction and prohibition of the posting of any prisoners photographs after release.

First, as already noted earlier in this Report and Recommendation, the "publication" of the photo was on a web site www.wvjail.info, which by its own description is "your fair use public records news reporting and research resource." In other words, the site is not under the jurisdiction of the government, but is a private website that gathers public records and displays them on its own site. The site has a procedure for the individual to have his or her information removed for a fee. The undersigned reviewed the official West Virginia Division of Corrections page, which is public information, and did not find Plaintiff listed. The official web site expressly states that it is public information, and therefore:

> Any person, agency or entity, public or private, who reuses, publishes or communicates the information available from this server shall be solely liable and responsible for any claim or cause of action based upon or alleging an improper or inaccurate disclosure arising from such reuse, re-publication or communication, including but not limited to actions for defamation and invasion of privacy.

The undersigned United States Magistrate Judge therefore does not find Defendant Lucas liable for the posting of Plaintiff's booking photo on a private website which claims fair use for public records. Even if the undersigned believed the posting itself was a violation of Plaintiff's right by a defendant in this case, the undersigned would find Defendant Lucas not liable, as it is the Division of Corrections, and not the magistrate court, that posts the original booking photos.

## CONCLUSION

Upon consideration of all of the above, the undersigned United States Magistrate Judge finds and concludes that none of Plaintiff's claims can proceed as against Defendant Lucas. Accordingly, the undersigned respectfully recommends that Plaintiff's claims for compensatory damages, punitive damages, injunctive and declaratory relief, and writ of prohibition, under both his Complaint and Amended/Supplemental Complaint be **DISMISSED**.

## RECOMMENDATION

For the reasons stated herein, I respectfully **RECOMMEND** Defendant Lucas' (also known as Lenard Lewis') Motion to Dismiss and Motion to Dismiss Amended/Supplement to Primary Complaint [Docket Entries 17 and 22, respectively] be **GRANTED.** Accordingly, insofar as the Complaint and Amended/Supplemental Complaint attempt to state a claim against Defendant Lucas**,** I **RECOMMEND** the Complaint [Docket 1] and Amended/Supplemental Complaint [Docket Entry 19] be **DISMISSED WITH PREJUDICE.**

Any party may, within fourteen (14) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the

Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

The District Clerk for the United States District Court for the Northern District of West Virginia is directed to provide a copy of this order to all counsel of record and by Certified United States Mail to Plaintiff, *pro se*, at his last-reported address.

DATED: November 5, 2010.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE